HOLIDAY FOOD CO., INC. *v.* RODNEY MUNROE

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 919

Argued June 10, 1980 – decided January 9, 1981

*Alvin M. Murray,* for the appellant (plaintiff).

*Prescott W. May,* for the appellee (defendant).

BIELUCH, J.  The plaintiff brought this action seeking an accounting, damages and an injunction restraining the defendant from contacting persons on the plaintiff's customer list and from using its business forms.  After a trial to the court, the relief sought by the plaintiff was denied.  The plaintiff has appealed from that judgment.

The underlying facts, found in the memorandum of decision and other material uncontested parts of the proceeding at trial; *New York Annual Conference of the United Methodist Church* v. *Fisher,* 182 Conn. 272, 274, 438 A.2d 62 (1980); establish the

following: For approximately twenty years, the plaintiff sold and delivered frozen foods and associated products to its customers. These customers were solicited by telephone, referrals, direct mail and television and newspaper advertising. The names and addresses of several hundred customers were compiled into a customer list. Additional entries were made to the list as new customers were acquired and were customarily removed if no sale was made for more than a year. The customer list was left on the desk of the secretary to the plaintiff's owner-president. It was accessible to the plaintiff's employees, although only a few had direct authorization to use it. The plaintiff's products were delivered to its customers' homes in trucks, some of which openly advertised the plaintiff's name on the side.

The defendant was employed by the plaintiff as a salesman and has been in the frozen food business almost continuously since 1967. He never used or even examined the customer list although he knew of its availability to him. The plaintiff's routine was to give the defendant names of potential customers from the list. The defendant compiled these names in a personal notebook in which he kept records of his sales, his commissions and customer reorder dates. The plaintiff's owner-president knew of this customer notebook and never objected to its existence or use by the defendant.

During his term of employment by the plaintiff, the defendant refused to sign a restrictive covenant not to compete in the event he terminated his employment. In 1979, the defendant resigned to organize his own frozen food delivery service in direct competition with the plaintiff. When he left the plaintiff's employ, the defendant took his customer notebook without objection from the plaintiff's owner-president who was aware of its removal. At trial the defendant testi-

fied that this notebook was subsequently stolen although the court made no such finding.

Some of the customers listed in the notebook had become personal friends of the defendant during his employment with the plaintiff. After his resignation, the defendant contacted these people, seeking their business and referrals for his own newly formed company. At the time of the trial, he had successfully sold his service to eight or nine customers with whom he had first made contact while still in the plaintiff's employ.

In the appeal, three claimed errors are briefed. A fourth issue was not briefed and is, therefore, considered abandoned. *Manley* v. *Pfeiffer*, 176 Conn. 540, 541, 409 A.2d 1009 (1979). The first briefed issue is whether the plaintiff's business forms are entitled to protection as trade secrets. This issue need not be considered because the plaintiff waived this claim at oral argument.

The plaintiff's second claim of error is that it should have been granted legal and equitable relief because the defendant made the initial contacts with the future customers of his business while in the plaintiff's employ, even though at the time of these contacts the defendant was furthering the plaintiff's business. The plaintiff relies on this rule: "[T]he right to injunctive relief and damages would apply . . . to business done with customers solicited before the end of the employment." *Town & Country House & Homes Service, Inc.* v. *Evans,* 150 Conn. 314, 321, 189 A.2d 390 (1963). The plaintiff interprets this rule to mean that any customer with whom the defendant had contact while employed by the plaintiff could never become a customer of the business formed by the defendant when he left the plaintiff's employ. This interpretation is not proper. The rule correctly would apply only to customers solicited by the defendant for the

enhancement of his business before his employment with the plaintiff had terminated. *Republic Systems & Programming, Inc.* v. *Computer Assistance, Inc.,* 322 F. Sup. 619, 627 (D. Conn. 1970); *Town & Country House & Homes Service, Inc.* v. *Evans,* supra, 318. Unless the name of a customer is a trade secret, a former employee can later contact customers with whom he did business while an employee. In this case, the evidence is clear that the defendant made all contacts for his own business purposes after he left the plaintiff's employ. There is no factual basis for the claimed error.

The third issue is whether the plaintiff's customer list is a trade secret. If it is a trade secret, then it would be proper to enjoin the defendant from using his knowledge of the contents of the list in order to make contact with customers of his former employer for his own business endeavors. The trial court found that the list could not be so characterized.

"A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound . . . or a list of customers . . . ." *Allen Mfg. Co.* v. *Loika,* 145 Conn. 509, 516, 144 A.2d 306 (1958), quoting Restatement, 4 Torts § 757, comment b. An agent has no duty to abstain from competition with his principal after termination of the agency, but he has a duty not to use on his own account, in competition with the principal or to the latter's injury, trade secrets revealed to him in confidence or surreptitiously discovered by the agent. *Allen Mfg. Co.* v. *Loika,* supra, 517; Restatement (Second), Agency § 396; Bruce, "Theft of Business Opportunity," 53 Conn. B.J. 164, 170–75. After the termination of an employee's agency, in the absence of a restrictive agreement, the agent can properly compete with his

principal as to matters for which he was employed, although he cannot properly use confidential information peculiar to his employer's business acquired while he was an agent. *LaFrance* v. *Hart,* 8 Conn. Sup. 286, 287 (1940); Restatement (Second), Agency § 393, comment e.

"Some of the factors to be considered in determining whether given information is a trade secret are: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Restatement, 4 Torts § 757, comment b." *Town & Country House & Homes Service, Inc.* v. *Evans,* supra, 319, quoted with approval in *Plastic & Metal Fabricators, Inc.* v. *Roy,* 163 Conn. 257, 265 n.3, 303 A.2d 725 (1972). In reviewing these factors, courts also look to (1) the extent to which the employer-employee relationship was a confidential or fiduciary one; (2) the method by which the former employee acquired or compiled the alleged secret; (3) the former employee's personal relationship with the customers; and (4) the unfair advantage accruing to the former employee from the use of his former employer's alleged secret. *Pressure Science, Inc.* v. *Kramer,* 413 F. Sup. 618, 626–27 (D. Conn. 1976); 28 A.L.R.3d 7.

Customer lists are on the periphery of the law of trade secrets and unfair competition. Although factors exist to assist the court, it need not accord them equal weight or consideration. Whether a particular use of a customer list by a former employee constitutes an exercise of his right to use general knowl-

edge and experience gained in the former employment, or whether it violates his confidential relationship with his former employer not to use trade secrets or confidential information acquired in the course of his former employment, will depend generally on the particular facts and circumstances involved. It is a question of fact to be determined by the trial court. *Allen Mfg. Co.* v. *Loika,* supra, 516.

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book, 1978, § 3060D. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous . . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Therefore, a trial court's conclusion that an item is not a trade secret must be allowed to stand if it is reasonably supported by the relevant subordinate facts found and does not violate law, logic or reason. *Bell* v. *Planning & Zoning Commission,* 174 Conn. 493, 496, 391 A.2d 154 (1978); *Plastic & Metal Fabricators, Inc.* v. *Roy,* supra, 268.

In this case, the defendant did not surreptitiously remove, copy or withhold the plaintiff's customer list.

In fact, he compiled and removed his personal customer notebook with the full knowledge of and without objection from the plaintiff. *Kalnitz* v. *Ion Exchange Products, Inc.,* 2 Ill. App. 3d 158, 276 N.E.2d 60 (1971). The plaintiff neither locked away nor otherwise attempted to hide its customer list from persons not authorized to view it. *Town & Country House & Homes Service, Inc.* v. *Evans,* supra. Not only was there no restrictive covenant not to compete, but the defendant expressly declined to sign such a document. *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95, 130 P. 1180 (1913). The successful continuance of the plaintiff's business was not seriously affected by the defendant's contacts with customers whose names appeared on the customer list. 28 A.L.R.3d 7, 79. Furthermore, the customers solicited by the defendant subsequent to the termination of his employment with the plaintiff were his friends as well as potential clients. *Curry* v. *Marquart,* 133 Ohio St. 77, 11 N.E.2d 868 (1937); *Spring Steels, Inc.* v. *Molloy,* 400 Pa. 354, 162 A.2d 370 (1960). Even without such friendship, their addresses could have been determined without considerable expense or energetic spying by observing the plaintiff's plainly marked trucks making their deliveries. *Fulton Grand Laundry Co.* v. *Johnson,* 140 Md. 359, 117 A. 753 (1922). There was no finding or evidence to indicate that the plaintiff's customer list contained anything but names and addresses; it did not list any detailed information of the customer's buying habits, requirements, preferences or other difficult to obtain data. *Southern California Disinfecting Co.* v. *Lomkin,* 183 Cal. App. 2d 431, 7 Cal. Rptr. 43 (1960). Neither was there a finding that any special relationship of confidence or trust existed between the plaintiff and the defendant. *Schavoir* v. *American Re-Bonded Leather Co.,* 104 Conn. 472, 476, 133 A. 582 (1926). From these facts, the court was correct in its conclu-

sion that the names and addresses on the plaintiff's customer list were not entitled to protection as a trade secret and were available for business solicitation by the defendant.

There is no error.

In this opinion DALY, J., concurred.

SHEA, J. (concurring). I have serious reservations about the sufficiency of the facts set forth in the memorandum of decision to support the conclusion of the trial court that the plaintiff employer's list of customers was not a trade secret. There is nothing in the memorandum to indicate why this list failed to qualify as a trade secret under the criteria for making such a determination as outlined in *Town & Country House & Homes Service, Inc.* v. *Evans,* 150 Conn. 314, 189 A.2d 390 (1963). The only findings unfavorable to the plaintiff mentioned by the trial court are that the list of customers was kept on a secretary's desk where it might be consulted by any employees having reason to do so, and that deliveries were made in trucks identifiable as belonging to the plaintiff. If this evidence formed the basis for the court's conclusion, I disagree with it. In the practical operation of a business a customer list can hardly be surrounded with security precautions appropriate for crown jewels or military secrets.

We need not decide, however, whether the plaintiff's customer list constituted a trade secret, because the trial court found that the defendant never consulted this list. The names supplied to him as sales prospects were taken from the list by his employer, and the defendant compiled his own notebook of those persons whom he had contacted personally. The evidence established that the defendant at the time of trial had done business with eight or nine persons who were former customers of the plaintiff. The trial court made no finding as to whether the defendant

had utilized his notebook, which he claimed had been stolen, in obtaining these persons as customers for his business. The Restatement of Agency takes the position that an employee is ordinarily privileged to use the names of customers retained in his memory as a result of his normal employment activities in competing with his former employer, after termination of his employment. Restatement (Second), Agency § 396. Most of the cases have supported this view. Note, 28 A.L.R.3d 7, 67–77. The facts found by the trial court would bring this case within this principle. Even if the defendant had relied upon his notebook in finding the eight or nine persons involved, the outcome should not turn upon whether the former employee is blessed with a sufficient memory to serve his needs. See 28 A.L.R.3d 7, 73–77. At least where the employer is aware that the employee has kept a personal notebook and has raised no objection to the practice or to the ultimate removal of the notebook by the employee, as found by the trial court in this case, the utilization of the notebook would not preclude the application of the principle of the Restatement. In the absence of an express noncompetition agreement, an employee would have no reason to think that he might be prevented from soliciting business from persons with whom he might have developed strong personal ties during his former employment.

I concur in the result.