**NATIONWIDE MUTUAL INSURANCE COMPANY**

v.

**Carl W. STENGER, III.**

**Civ. No. B 88–325(TFGD).**

United States District Court, D. Connecticut.

July 13, 1988.

Joseph F. Skelley, Jr., Deborah Freeman, Hartford, Conn., for plaintiff.

Grant P. Haskell, Thomas E. Minogue, Jr., Southport, Conn., for defendant.

## RULING ON MOTION FOR PRELIMINARY INJUNCTION

DALY, Chief Judge.

Since 1977, defendant has been an insurance agent for the plaintiff. In early 1988, while still an exclusive agent for plaintiff, defendant became an agent for two other insurance companies. At about this time defendant also began soliciting Nationwide policyholders in order to induce them to switch their insurance policy or policies to one of the other insurance companies with which he had become associated. A temporary restraining order was entered on June 16th, and a hearing on the motion for preliminary injunction was held on June 24th.

Plaintiff's motion for preliminary injunction seeks the following relief: 1) defendant shall return and shall not misappropriate plaintiff's "trade secrets" within the meaning of C.G.S. § 35–51(d); 2) for one year, defendant shall not cancel or encourage the cancellation of plaintiff's policies of insurance, or encourage or participate in the substituting of policies of other insurance companies for plaintiff's policies of insurance; 3) defendant shall not copy, use or disseminate to any person or entity other than plaintiff, information contained in plaintiff's files, business records and materials; and 4) defendant shall account to plaintiff for any profits earned from the misappropriation of plaintiff's trade secrets and for the breach of his duty of loyalty and fiduciary responsibility to plaintiff.

A party seeking preliminary injunctive relief must establish (a) that the injunction is necessary to prevent irreparable harm and (b) either that (i) it is likely to succeed on the merits of the underlying claim or (ii) that there are sufficiently serious questions regarding the merits of the claim to make it fair ground for litigation and that the balance of hardships tips decidedly in favor of the moving party. *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir.1988) (citing *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985).

The essential facts of this case are as follows. Defendant began his career with plaintiff in 1977 as an employee/agent, and continued in that capacity until 1980 when he became an independent contractor/agent. In early 1983, Nationwide transferred a block of approximately 1,000 policies, which had previously been handled by defendant's father as a Nationwide agent, to defendant's account. This was

occasioned by defendant's father's ill health.

At the time the incidents in this action are alleged to have occurred, defendant was an exclusive insurance agent for plaintiff. At such time defendant's relationship with plaintiff was governed by an Agent's Agreement. Exhibit 10a. Pursuant to this agreement (the "Agreement"), defendant was to act as an independent contractor, and was to represent plaintiff exclusively in the sale and service of insurance. Paragraph four (4) of the Agreement provides that "[s]uch exclusive representation shall mean that you will not solicit or write policies of insurance in companies other than those parties to this Agreement, either directly or indirectly, without the written consent of these Companies."[1]

As a Nationwide insurance agent, defendant sold property casualty, life and health, inland marine, and commercial insurance, as well as mutual funds. During the period covering approximately 1984 to 1986, a substantial part of defendant's business was generated from the sale of commercial insurance. The underwriting of commercial business was terminated, however, when Nationwide decided in early 1987 to stop underwriting commercial insurance. Defendant's business suffered accordingly. In April, 1988, as a result of this decision by Nationwide, defendant, without consulting Nationwide, became an agent for Aetna and Crum and Foster. Both of these insurance companies are competitors of Nationwide.

Shortly after April, 1988, defendant began soliciting his customers who had Nationwide policies of insurance in order to induce them to switch their insurance carrier to either Aetna or Crum and Foster. He did this by sending letters to approximately 300 to 350 customers whose policies had July renewal dates. Upon learning of this conduct plaintiff sent a letter to defendant on June 2nd notifying him that it was can-celling the Agreement effective May 31st, 1988.

Following the termination of the Agreement, defendant refused to return to plaintiff the physical customer files (the "PCFs") which were in his possession. Defendant also maintained, and had access to, the Agent's Office Automation System (the "AOA"), which is a centralized computer system maintained by Nationwide and designed to compile a data base consisting of information relevant to Nationwide's policies of insurance and its policyholders. The testimony indicates that defendant did not refuse to return the AOA.

The PCFs are a valuable business tool for both plaintiff, as an insurance carrier, and defendant, as an insurance agent. The files contain information such as: personal (including financial and family) data, insurance history, current coverage, renewal dates, claims information, and correspondence. The AOA, which is accessed by code, contains information similar to that found in the PCFs. Plaintiff has no specific policy regarding the nondisclosure of the information contained in either the PCFs or the AOA, and access to them is not restricted.

In the instant motion plaintiff's claim that defendant: 1) breached the Agreement; 2) breached his common law duty of loyalty and fiduciary duty; and 3) misappropriated trade secrets. With respect to the claimed breach of contract, it is clear that defendant's admittedly conscious decision to become an agent for two additional insurance companies, and to solicit Nationwide policyholders prior to the termination of the Agreement for the purpose of inducing a switch in insurance companies is a flagrant violation of paragraph four (4) of the Agreement. For this breach plaintiff may well be entitled to an accounting. The plaintiff has failed to persuade the Court, however, that injunctive relief is necessary to prevent irreparable harm for this breach.[2]

---

1. The term Companies refers collectively to a number of Nationwide, and other, companies underwriting different insurance risks. It appears that all of these companies are related in some way.

2. The conclusion that plaintiff may be entitled to an accounting does not consider the possibility that plaintiff's exclusive remedy in this case may be liquidated damages as discussed *infra*.

The Court shall now turn to defendant's common law duty of loyalty and fiduciary duty. Under the common law in Connecticut, knowledge acquired by an employee or agent during his hire cannot be used for his own advantage to the injury of the employer or principal *during* the period of hire. *Allen Manufacturing Co. v. Loika*, 145 Conn. 509, 514, 144 A.2d 306 (1958). After the period of hire has ceased, the employee or agent remains subject to a duty. That duty, however, is limited to not using *trade secrets* acquired during the period of hire for the benefit of the employee or agent and to the detriment of his former employer or principal. *Id.* Thus, prior to the termination of the Agreement, in addition to being precluded from inducing so called policyholder "switches" by the Agreement, defendant had a duty to refrain from using the PCFs to his advantage and to the detriment of plaintiff. This duty was clearly breached by defendant. As indicated above, plaintiff may be entitled to an accounting; however, the plaintiff has failed to persuade the Court that injunctive relief is either necessary or appropriate to remedy this breach.

The heart of plaintiff's request for injunctive relief concerns defendant's continuing misappropriation of trade secrets in connection with his attempts to induce customers to defect from Nationwide. Plaintiff's success on this common law claim hinges on a finding that the PCFs constitute "trade secrets". The determination of whether the PCFs are protected trade secrets in necessarily a factually intensive one. In addition to being protected under Connecticut common law, trade secrets have also been protected by statutory law in Connecticut since at least 1983.

The Uniform Trade Secrets Act defines "trade secrets" as "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of

efforts that are reasonable under the circumstances to maintain its secrecy." C.G.S. § 35–52 (1987).

Decisional law has considered a number of factors in determining whether given information is a trade secret. The first six are taken from Restatement (Fourth) Torts § 757, comment b. They are: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. Additional factors cited by courts are: (7) the extent to which the principal-agent relationship was a confidential or fiduciary one; (8) the method by which the former agent acquired the alleged secret; (9) the former agent's personal relationship with the customers; and (10) the unfair advantage accruing to the former agent from the use of his former principal's alleged secret. *Holiday Food Co. v. Munroe*, 37 Conn.Supp. 546, 551, 426 A.2d 814, 817 (1981) (citing *Pressure Science, Inc. v. Kramer*, 413 F.Supp. 618, 626–27 (D.Conn.), *aff'd*, 551 F.2d 301 (2d Cir.1976)).

Application of the necessarily abbreviated evidentiary record made thusfar in this case, has not convinced the Court that plaintiff is likely to succeed on the merits of the case. By "likely" the Court means that the probability of prevailing is better than fifty percent. *Abdul Wali*, 754 F.2d at 1025.

The information contained in the PCFs, although valuable to plaintiff, was not protected by reasonable measures designed to limit access thereto, and to prevent disclosure thereof. This fact seriously undermines plaintiff's claim that the PCFs contain confidential information. The Court is also not convinced, on the present record,

that plaintiff has expended substantial time, money, and/or effort on developing the information contained in the PCFs. To the extent the information contained in the PCFs is generated in the ordinary course of business, no special incentive is necessary to encourage its production. Indeed, it is recognized that customer lists, which are not dissimilar from PCFs, are on the periphery of the law of trade secrets. *Holiday Food Co.*, 426 A.2d at 817 (customer list in frozen food business not protected), *Corroon & Black–Rutters & Roberts, Inc. v. Hosch*, 109 Wis.2d 290, 325 N.W.2d 883 (1982) (insurance *agency's* customer files not entitled to protection). In sum, the Court is simply not persuaded on the present record that the PCFs merit protection in this case.

The Court also believes that a legitimate question is presented in this case regarding whether the plaintiff or defendant has the superior proprietary interest in the PCFs, on either an individual or overall basis. *Cf. Hosch*, 325 N.W.2d 883. To the extent defendant, as an independent contractor, has expended substantial time, money and/or effort obtaining the information in the PCFs, and has developed a strong personal relationship with Nationwide policyholders, defendant would appear to have a legitimate proprietary interest therein. This question was not explicitly raised by the parties, and is noted here simply to illustrate an additional hurdle which plaintiff may be required to overcome in a trial on the merits.

Although the Court finds that plaintiff has not established a likelihood of success on the merits, it also finds that the matter is fair ground for litigation. Under the second test for preliminary injunction, however, the Court is not convinced that the equities tip decidedly in plaintiff's favor. Plaintiff's business will not be seriously, adversely affected by defendant's retention of the PCFs. Most, if not all, of the information contained therein can be found in the insurance policies themselves or in the AOA. Although a lifting of the temporary restraining order will no doubt increase competition, the Court cannot say that this amounts to a tipping of the equities.

■ The Court's denial of plaintiff's motion for preliminary injunction is based on an alternative ground as well. The Agreement includes an anti-competition covenant in paragraph 12. By its terms, however, this paragraph, which only applies if the Agreement is cancelled "within a period of five years from the date of your first contract as an agent with the Company," does not apply to defendant. Therefore, the Agreement itself does not bar defendant from competing with plaintiff. Furthermore, and more importantly, the Agreement appears to provide for liquidated damages. Interestingly, plaintiff has failed to address this point in the papers submitted in support of its motion for preliminary injunction.

It is settled law that a contract provision that works a penalty for its breach is invalid as contrary to public policy. Under certain conditions, however, a contractual provision which fixes liquidated damages is enforceable. *Norwalk Door Closer Co. v. Eagle Lock & Screw Co.*, 220 A.2d 263, 153 Conn. 681, 686 (1966). The conditions justifying an agreement for liquidated damages are: "(1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by contractee in the event of a breach of the contract." *Id.* (quoting *Berger v. Shanahan*, 118 A.2d 311, 142 Conn. 726, 731 (1955)).

The liquidated damages provision in the Agreement, paragraph 11(f), sets forth three conditions whose breach would bar defendant from collecting certain deferred compensation benefits. One of the conditions provides as follows:

After cancellation of this Agreement, you directly or indirectly induce, attempt to induce, or assist anyone else in inducing or attempting to induce policyholders

to lapse, cancel, or replace any insurance contract in force with the Companies; furnish any other person or organization with the name of any policyholder of the Companies so as to facilitate the solicitation by others of any policyholder for insurance or for any other purpose.

The amount of deferred compensation that defendant estimates he has forfeited as a result of his breach of the above condition is $200,000. On the present record, the Court is persuaded that this liquidated damages clause is valid and enforceable, and that it covers defendant's conduct in this case. This finding, although not conclusive, seriously undermines any claim by plaintiff that it is entitled to injunctive relief. Assuming, as the Court must on the present record, that liquidated damages are due and owing under the Agreement for defendant's breach, then plaintiff cannot be found to be without an adequate remedy at law.

For the foregoing reasons, plaintiff's motion for preliminary injunction is DENIED, and the Temporary Restraining Order entered by this Court on June 16th is hereby VACATED.