[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The named corporate defendant and three individuals, Timothy Fusco, David P. Ditta and Robert Blake have appeared in response to an order to show cause why the following order should not issue thereon:
A temporary injunction enjoining the defendants from utilizing any of the information which constitutes trade secrets secured as a result of their [former] employment with the plaintiff.
The verified complaint alleges: that the plaintiff Baron Consulting Company was and is in the business of chemical and environmental analyses and has developed over the course of approximately twenty-seven years substantial expertise, knowledge, trade secrets and customer lists in connection with its business; that defendants Ditta and Fusco were employees of the plaintiff for many years, serving in highly technical roles and having access to trade secrets of the plaintiff, including but not limited to scientific technology and approach, pricing mechanisms, customer lists; that Ditta and Fusco terminated their relations with the plaintiff in June of 1993 and formed a corporation known as Complete Environmental Testing, Inc., which was incorporated on June 24, 1993; that the defendant Blake who served as the primary marketing and sales manager of the plaintiff joined this enterprise in October of 1993; that the defendants have utilized the trade secrets acquired during their employment and have taken records and software in regard to said trade secrets and confidential information which records and software are rightfully the property of the plaintiff. The complaint further alleges damages resulting from the activities of the defendants for which no adequate remedy is available at law and damage which is irreparable if the activities of the defendants continue.
The contested hearing enabled the court to find that at the present time the corporate defendant Complete Environmental Testing, Inc. is competing in the marketplace for business with the plaintiff corporation. The corporation is owned by defendants Fusco and Ditta who are its principal technical employees. The defendant Blake has been employed as sales manager by the corporation since he resigned from the plaintiff in October of 1993. The defendant corporation commenced business in September of 1993 and as of May 1994 had a customer list of 86 names only 12 of whom had never been customers of the plaintiff. CT Page 8582 Of the remaining 74 names on the list all had been customers of the plaintiff at one time or another during the time the defendants were employees of the plaintiff. A substantial number of these customers were customers of the plaintiff at the time the individual defendants departed the employment of the plaintiff.
The president of the plaintiff corporation, Dr. Harry Agahigian, testified that since the entry of the defendant corporation into the marketplace, the plaintiff corporation's billing for environmental testing declined precipitously. The plaintiff corporation was started by Dr. Agahigian approximately twenty-seven years ago; environmental testing is only one component of the business albeit a substantial component.
Defendant Blake, the only one of the three former employees without formal chemical education, worked for the company for seventeen years. Hands-on training developed his competence in laboratory work enabling him to write technical testing reports which contained billing information based on an official price list and negotiated discounts. Blake had extensive contact with the environmental customers of the plaintiff. Ultimately, he became a salesperson in possession of salesbooks which contained a wide variety of customer information. When Blake left employment with the plaintiff, he left these books behind.
Defendants Fusco and Ditta are both trained chemists with expertise in gas chromatography. They had the primary responsibility for environmental testing, the writing of test reports, the preparation of billing information based on the official publicly available price lists and the granting of discounts to selected customers. There was conflicting testimony as to the extent that discounts from the public price list were granted. The court finds that approximately 20 percent of the customers received these discounts. The discounts were not public knowledge. They were recorded in the customers' files and in the electronic data processing system. Although the electronic data was available to the defendants, the evidence would not support a finding that the defendants copied this information when they left plaintiff's employment. All of the defendants knew the customers who received these discounts from their long experience in servicing them. No formula existed to calculate the discounts. They were simple percentage discounts negotiated with individual customers. CT Page 8583
Ditta and Fusco improperly copied a log-in software program from plaintiff's computer before they resigned. The program copied was essentially a blank form. It had limited use to defendants who substituted another program for the one appropriated after using it in their business for about two weeks. The court cannot determine whether it provided any benefit to the defendants or detriment to the plaintiff. The software log-in program also contained an alphabetic listing of plaintiff's customers. Defendants testified credibly that this was not the basis for their list of potential customers. The defendants compiled a list of potential customers from their collective memories, Blake, seventeen years; Ditta, twelve years, and Fusco, ten years. These memories were based on repeated contacts with customers.
The Restatement of Agency takes the position that an employee is ordinarily privileged to use the names of customers retained in his memory as a result of his normal employment activities in competing with his former employer after the termination of his employment. Restatement (Second) Agency § 396. None of these employees were signatories to an express noncompetition agreement. At no time during their employment did they have employment contracts nor were any express confidentiality regulations in force during their employment.
Plaintiff claims that despite this plaintiff's customer lists and negotiated price lists have met all the requirements of trade secrets. There is no question that plaintiff's customer list was in existence when defendants departed and that defendants had access to it. The court has concluded, however, that defendants did not need it and have not used it to compile their own potential customer list. In addition to their memories, the defendants have used readily available trade publications to prepare a source list of potential business clients. In regard to a negotiated price list, the same situation essentially prevails; the defendants did not appropriate any formal list, they did not access each customer file before they resigned, what they took with them was their own recollection of the discounts any particular customer received off the list price.
"The law of trade secrets in Connecticut first developed under the common law and has since been codified in the Uniform Trade Secrets Act, Conn. Gen. Stat. Secs. 35-50 through CT Page 858435-58. Essentially, the purpose and objective of the legal protection of trade secrets is the encouragement of inventions and the resulting benefits to society. Hyde, Legal Protection ofComputer Software, 59 Conn. B.J. 298, 314 (1985). See alsoKewanee Oil So. v. Bicron Corp. , 416 U.S. 470, 481 (1974) and Marcuse, The Protection of Trade Secrets, 36 Conn. B.J. 348, 348-51, 373 (1962). The Connecticut statute specifies that information such as a customer list can be a trade secret. Conn. Gen. Stat. Sec. 35-51(d). However, for any particular compilation of a customer list and other customer data to be considered a trade secret it must:
 1. derive independent economic value from not being generally known, and not being readily ascertainable by proper means, by other people who can obtain economic value from its use of disclosure; and
 2. be the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
Conn. Gen. Stat. Sec. 35-51(d)." Transam, Inc, dba v. ARIBusiness Products v. Robert Zhawred, et al., 16 CLT 27, July 9, 1990, p. 472.
Both under the common law and under the later statute, the courts have considered a number of factors in determining whether given information is a trade secret. See NationwideMutual Insurance Co. v. Stenger, 695 F. Sup. 688, 691
(D. Conn. 1988). The most common of these are: "(1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to his competitors; (5) the amount of effort or money expended by the employer in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others;Town and Country House and Homes Services, Inc. v. Evans,150 Conn. 314, 319 (1963)."
Courts can also look to "(1) the extent to which the employer-employee relationship was a confidential or fiduciary one; (2) the method by which the former employee acquired or compiled the alleged secret; (3) the former employee's personal relationship with the customers; and (4) the unfair advantage CT Page 8585 accruing to the former employee from the use of his former employer's alleged secret." Holiday Food Co., Inc. v. Munroe,37 Conn. Sup. 546, 551 (App. Sess. 1981); Pressure Science, Inc. v.Kramer, 413 F. Sup. 618, 626-27 (D. Conn. 1976). While these factors may be helpful in determining whether information fits the statutory criteria for a trade secret, courts need not accord them equal weight or consideration. Holiday Food Co., Inc. v.Munroe, 37 Conn. Sup. at 551.
In seeking a temporary injunction, a plaintiff bears a heavy burden of proof. The moving party has the burden of establishing (a) irreparable harm; and (b) either (1) probable success of the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief, New England Eye Care ofWaterbury, P.C. d/b/a New Insight Family Eye Care, P.C. v. New EnglandEye Care, P.C. et al, 3 Conn. L.Rptr. 724 (1991); Conn. ClinicalLaboratories v. Connecticut Blue Cross, 31 Conn. Sup. 110,113 (1973); Torrington Drive In Corp. v. I.A.T.S.E.M.P.M.O.Local 402, A.F.L., 17 Conn. Sup. 416, 418 (1951); Martino v. L.D.DeFelice Son, Inc., 16 Conn. Sup. 18, 19 (1948); Adams v.Greenwich Water Co., 138 Conn. 205, 218 (1951).
The information which the plaintiff seeks to restrict seems to be precisely the kind of knowledge that employees legitimately acquire through experience. Furthermore, it is information easily discoverable in the yellow pages or trade directories. The open and ready availability of a price list invites discounting in the competitive environmental testing market which is serviced by approximately 250 vendors. It therefore was readily ascertainable by proper means by the defendants who can obtain economic value from its use.
The court concludes that plaintiff has not provided satisfactory proof that its customer list or negotiated price list is deserving of protection as a trade secret.
Accordingly, no injunction may issue protecting either source of information.
Defendants have agreed that an order may issue requiring the defendants to return to the plaintiff the software they copied if the disk is available. If the disk is unavailable, they must provide plaintiff with affidavits that the CT Page 8586 disk is unavailable. The court orders the defendants to return the disk and in the alternative to provide the plaintiff with an affidavit that the disk is unavailable.
Dorsey, J. State Trial Referee