08-5214-cv, 08-5231-cv, 08-5233-cv, 08-5234-cv
*Nationwide Mut. Ins. Co. v. Mortensen, Nationwide Mut. Ins. Co. v. Morin,*
*Nationwide Mut. Ins. Co. v. Marcucilli Nationwide Mut. Ins. Co. v. Johnson Agency Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued in tandem: November 5, 2009           Decided: May 11, 2010)

Docket Nos. 08-5214-cv, 08-5231-cv, 08-5233-cv, 08-5234-cv, 08-5256-cv, 08-5258-cv,
08-5412-cv, 08-5413-cv, 08-5427-cv, 08-5450-cv

(Consolidated for disposition)

_____

NATIONWIDE MUTUAL INSURANCE CO., NATIONWIDE MUTUAL FIRE INSURANCE CO.,
NATIONWIDE LIFE INSURANCE CO., NATIONWIDE PROP. & CASUALTY INSURANCE CO.,

         *Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants,*

       – v. –                        Nos.   08-5214-cv, 08-5256-cv,
                                                  08-5258-cv, 08-5450-cv

BRUCE J. MORTENSEN, PATRICIA BLAND, DAVID H. DONALDSON,

         *Defendants-Counterclaimants-Appellants-Cross-Appellees.*

_____

NATIONWIDE MUTUAL INSURANCE CO., NATIONWIDE LIFE INSURANCE CO., NATIONWIDE
GENERAL INSURANCE CO., NATIONWIDE ASSURANCE CO., formerly known as Colonial Insurance
Company of California, formerly known as Colonial Insurance Company of Wisconsin,
NATIONWIDE PROPERTY AND CASUALTY CO., NATIONWIDE MUTUAL FIRE INSURANCE CO.,
NATIONWIDE VARIABLE LIFE INSURANCE CO.,

         *Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants,*

       – v. –                                 Nos.   08-5231-cv, 08-5427-cv

RONALD P. MORIN, SR., d/b/a Buckland Hills Ins. Agency, d/b/a Tri-Town Agency, d/b/a Enfield
Square Agency, CHET W. KOELSCH, d/b/a Enfield Square Agency, RONALD MORIN, JR.,

         *Defendants-Counterclaimants-Appellants-Cross-Appellees.*

NATIONWIDE MUTUAL INSURANCE CO., NATIONWIDE MUTUAL FIRE INSURANCE CO., NATIONWIDE LIFE INSURANCE CO., NATIONWIDE GENERAL INSURANCE CO., NATIONWIDE VARIABLE LIFE INSURANCE CO., COLONIAL INSURANCE COMPANY OF CALIFORNIA, NATIONWIDE PROPERTY AND CASUALTY CO.,

*Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants*,

– v. –                                               Nos.  08-5233-cv, 08-5413-cv

JOHN MARCUCILLI, JAMES L. BIRARELLI, JAMES W. WARNER, SR., MARCUCILLI AGENCY INC., JAMES L. BIRARELLI INC., MORAINE GROUP INC.,

*Defendants-Counterclaimants-Counter-Defendants-Appellants-Cross-Appellees*.

NATIONWIDE MUTUAL INSURANCE CO., NATIONWIDE MUTUAL FIRE INSURANCE CO., NATIONWIDE LIFE INSURANCE CO., NATIONWIDE GENERAL INSURANCE CO., NATIONWIDE VARIABLE LIFE INSURANCE CO., COLONIAL INSURANCE COMPANY OF CALIFORNIA, NATIONWIDE PROPERTY AND CASUALTY CO.,

*Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants*,

– v. –                                               Nos.  08-5234-cv, 08-5412-cv

JOHNSON AGENCY INC., BONNIE JOHNSON,

*Defendants-Counterclaimants-Appellants-Cross-Appellees*.

Before: B.D. PARKER, HALL, AND LYNCH, *Circuit Judges*.

———————————

Appeal from a judgment of the United States District Court for the District of Connecticut (Chatigny, *J.*) dismissing claims and counterclaims related to insurance agents' retention of policyholder information after they terminated their exclusive agency agreement with plaintiff insurance company. Affirmed.

———————————

Ben M. Krowicki, Bingham McCutchen LLP,

2

Hartford, CT, *for Plaintiffs-Counter-Defendants-Appellees-Cross-Appellants*.

Frank F. Coulom, Jr. (Linda L. Morkan and Jude Francois, *on the brief*), Robinson & Cole LLP, Hartford, CT, *for Defendants-Counterclaimants-Appellants-Cross-Appellees*.

---

BARRINGTON D. PARKER, CIRCUIT JUDGE:

The parties appeal from a judgment of the United States District Court for the District of Connecticut (Chatigny, *J.*) dismissing claims and counterclaims related to the retention of policyholder information by insurance agents after they terminated their exclusive agency agreement with Nationwide Mutual Insurance Co. ("Nationwide"). In 1999, the defendants – insurance agents who had long sold Nationwide insurance policies – began to terminate their agency agreements in order to work for Nationwide's competitors. This appeal considers whether policyholder information compiled by the agents and stored in various formats constitutes a protected "trade secret" or other confidential information belonging to Nationwide. The agents, for their part, raise counterclaims arguing that Nationwide violated their contract by seeking to deprive them of this policyholder information and, in the alternative, that they are entitled to certain deferred compensation they accrued. Because we find that the policyholder files do not constitute trade secrets or confidential information protected by Connecticut law, we reject Nationwide's trade secrets and related claims. In addition, we conclude that the district court correctly dismissed the agents' counterclaims.

I.      **BACKGROUND**

3

The facts of the case are ably described by the district court's summary judgment opinion. *See Nationwide Mut. Ins. Co. v. Bland*, No. 99-cv-2005, 2003 WL 23354137 (D. Conn. Mar. 30, 2003). We recount only those facts essential to our opinion. Unless otherwise noted, they are not disputed.

A.     The Agent's Agreement

When each defendant began to work as a Nationwide insurance agent, he or she signed an identical, standard-form contract with Nationwide called an Agent's Agreement. By the terms of the contract, each defendant's relationship with the company was that of an exclusive agent and "independent contractor." *See* Agent's Agreement ¶¶ 1, 4. As Nationwide agents, the defendants were not permitted to sell or solicit insurance for any Nationwide competitor, but otherwise they were permitted to operate their individual businesses as they saw fit.

Initially, the agents were given a large number of policyholder files of preexisting Nationwide customers. From then on, they serviced these customers and solicited new ones. In the course of this work, they maintained physical policyholder files containing information relevant to the customers' insurance needs, including documentation that they received from both the customers and Nationwide.

The agents also used Nationwide's Agency Office Automation ("AOA") computer system, which they were required to lease from Nationwide. This database linked them with Nationwide's central computers, permitting them to access insurance quotes in real-time, and it gathered and sorted the information collected in the policyholder files. The AOA system was password-protected.

The Agent's Agreement also included provisions relating to deferred compensation. The defendants could qualify for deferred compensation, payable after termination of the agency

4

relationship, so long as they complied with the conditions set out in Paragraph 11(f), which read as follows:

> **f. Cessation of Agency Security Compensation.**
> All liability of the Companies for Agency Security Compensation provided for in paragraph 11 and its subparagraphs shall cease and terminate in the event any one or more of the following shall occur:
>
>> (1)    You either directly or indirectly, by and for yourself or as an agent for another, or through others as their agent, engage in or be licensed as an agent, solicitor, representative, or broker or in anyways [sic] be connected with the . . . insurance business, within one year following cancellation within a 25 mile radius of your business location at that time; or
>>
>> (2)    You fail to return in good condition within ten days, all materials, records, and supplies furnished to you by the Companies during the course of this Agreement, together with any copies thereof; or
>>
>> (3)    After cancellation of this Agreement, you directly or indirectly induce, attempt to induce, or assist anyone else in inducing or attempting to induce policyholders to lapse, cancel, or replace any insurance contract in force with [Nationwide]; furnish any other person or organization with the name of any policyholder of [Nationwide] so as to facilitate the solicitation by others of any policyholder for insurance or for any other purpose.

An agent who violated any of these terms forfeited the right to the deferred compensation that had accrued over the period they solicited business for Nationwide. In many cases, that deferred compensation amounted to hundreds of thousands of dollars.

B.    The agents' departure and the subsequent litigation

In late 1999 and early 2000, the defendants terminated their agency relationships with Nationwide. In the months leading up to the terminations, they met with representatives of other insurance companies to discuss possible employment. During these meetings, they allegedly shared with the companies information contained in Nationwide's policyholder files concerning prices, computer print-outs of policyholder information from the AOA computer system ("screen prints"),

5

and copies of documents they received from Nationwide relating to their sales and commissions. After terminating the Agent's Agreement, they began to compete with Nationwide by selling policies issued by its competitors. At least initially, they asserted no right to the unpaid deferred compensation.

On learning of the defendants' activities, Nationwide filed this suit in diversity, contending that the agents had violated numerous provisions of Connecticut law. In particular, Nationwide claimed that the agents' retention and use of policyholder files violated the Agent's Agreement, the agents' fiduciary duties, and state law protecting trade secrets. All told, Nationwide asserted eleven separate claims: (1) breach of duty of loyalty (for the agents' post-termination conduct);[1] (2) breach of contract; (3) conversion; (4) civil theft; (5) breach of fiduciary duty (for the agents' pre-termination conduct); (6) violation of the Connecticut Uniform Trade Secrets Act (CUTSA), Conn. Gen. Stat. § 35-50 *et seq.*; (7) violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. §42-110a *et seq.*; (8) tortious interference with contract; (9) tortious interference with business expectancies; (10) civil violation of the Connecticut computer crime statute, Conn. Gen. Stat. §§ 52-570b, 53a-251; and (11) unjust enrichment.[2]

The agents, for their part, counterclaimed, alleging that Nationwide's suit constituted a breach of the Agent's Agreement and an unfair trade practice because it interfered with a contractual right to compete. At the same time, the agents alleged that they were, in fact, employees of Nationwide – not independent contractors – and, therefore, that they were entitled to their deferred

[1] Under Connecticut law, the duty of loyalty encompasses a limited set of obligations owed by an agent to the principal even after termination of the fiduciary relationship. *See Allen Mfg. Co. v. Loika*, 144 A.2d 306, 309 (Conn. 1958).

[2] Nationwide subsequently withdrew Claims 3 and 4, for conversion and civil theft, respectively.

compensation under ERISA. Their asserted counterclaims were as follows: (1) ERISA violation; (2) intentional ERISA violation; (3) breach of contract; (4) CUTPA violation; (5) CUTPA punitive damages; (6) conversion and civil theft.[3]

The district court entertained cross-motions for summary judgment in 2004. At that time, it rejected Nationwide's trade secrets claim (Claim 6), finding that the company's policyholder information did not constitute trade secrets. It also dismissed all of the agents' counterclaims, based on its determination that the agents were not "employees" under ERISA, that the contract did not limit Nationwide's right to sue for improper disclosure of confidential information, and that Nationwide's lawsuit was not a "sham" amounting to an unfair trade practice. It set Nationwide's remaining claims down for trial, principally because it observed that policyholder details might still qualify as "confidential information" that could not be used to compete – an issue left ambiguous by the Agent's Agreement.

In 2008, just prior to trial, the district court held several lengthy conferences with the parties in an effort to establish exactly what evidence and legal theories would be presented to the jury. At these conferences, the judge and the parties walked through each remaining claim in significant detail, and the court pressed for clarity about what Nationwide would seek to prove at trial. At the conclusion of this process, the district court noted that Nationwide no longer intended to present much of the extrinsic evidence it had previously planned to offer, and further found that the remaining proof was insufficient to support Nationwide's interpretation of the contract. Resolving the contract's ambiguity against the drafter – i.e., Nationwide – the district court held that the contract claim at the core of Nationwide's complaint failed. Broadly invoking Fed. R. Civ. P. 1's

---

[3] The agents' conversion and civil theft counterclaim has not been raised on appeal.

7

mandate to "secure the just, speedy, and inexpensive determination of every action," the court

dismissed Nationwide's other claims for lack of merit, paving the way for this appeal.

## II.    DISCUSSION

### A.    Standard of Review

The parties appeal from the district court's rulings on cross-motions for summary judgment,

and from its dismissal of the remaining claims shortly before trial, pursuant to its inherent authority

under Fed. R. Civ. P. 1. "We review a district court's grant of summary judgment *de novo*,

construing the evidence in the light most favorable to the non-moving party and drawing all

reasonable inferences in its favor." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). We

will affirm the judgment only if there is no genuine issue as to any material fact, and if the moving

party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

Nationwide acknowledges that the dismissal of its claims under Rule 1 should be reviewed

under an identical standard, but insists that it did not have adequate notice or opportunity to defend

for us to approve the district court's *sua sponte* dismissal. *See Bridgeway Corp. v Citibank*, 201 F.3d

134, 139 (2d Cir. 2000). We disagree that Nationwide was deprived of such an opportunity. We

have made clear that "grants of summary judgment without notice will be tolerated only in the

absence of some indication that the moving party might otherwise bring forward evidence that would

affect the . . . determination," and "when the facts before the district court were fully developed so

that the moving party suffered no procedural prejudice." *Id.* (internal quotation marks omitted).

Both of these important conditions were satisfied. The district court dismissed Nationwide's

remaining claims only after an exhaustive series of pre-trial conferences, which revealed that

Nationwide would not present evidence sufficient to prove its case. In particular, it became clear that

8

Nationwide would not offer any significant extrinsic evidence about the agreement's meaning, and that adequate proof of damages was also lacking. Moreover, the case was hardly at a preliminary or undeveloped stage; indeed, the district court had previously entertained summary judgment motions from both sides. In effect, it revisited its previous summary judgment ruling in light of the concessions that Nationwide later made about its case. We find no error in the district court's procedures, and therefore we turn to the merits.

### B. Nationwide's claims

#### 1. Trade secrets

Nationwide's primary claim is that the policyholder files retained by the departing agents constitute trade secrets protected by CUTSA, Conn. Gen. Stat. § 35-50 *et seq.* Under CUTSA, a trade secret is "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or *customer list* that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Conn. Gen. Stat. § 35-51(d) (emphasis added). While customer lists are within the scope of CUTSA, a number of courts have noted that such materials often lie "on the periphery of the law of trade secrets and unfair competition." *Holiday Food Co. v. Munroe*, 426 A.2d 814, 817 (Conn. Super. Ct. 1981); *see also Nationwide Mut. Ins. Co. v. Stenger*, 695 F. Supp. 688, 692 (D. Conn. 1988).

Importantly, although Nationwide contested the agents' right to all of the policyholder files and information in the litigation below, on appeal it focuses exclusively on print-outs that the agents took from the AOA computer system. This strategy was designed, presumably, to strengthen

9

Nationwide's argument that the screen-prints represent proprietary or confidential information.[4] The shift in focus, however, seriously undercuts Nationwide's argument. We must conclude, as a result, that Nationwide's claims with respect to the physical policyholder files have been waived on appeal. *See Norton v. Sam's Club*, 145 F.3d 114, 117-18 (2d Cir. 1998). Yet at the same time, the company nowhere shows that the AOA screen-prints contain substantially different information from the physical policyholder files. Indeed, Nationwide's counsel conceded this point at oral argument and the district court made precisely this finding. *See Bland*, 2003 WL 23354137, *4 ("[T]he prints concededly contain the same information as the files."). It is difficult to understand, then, how the screen-prints could be protected as trade secrets when this information could be easily obtained from the physical policyholder files themselves.

In order to qualify as a trade secret, materials cannot be "readily ascertainable by proper means" from another source. Conn. Gen. Stat. § 35-51(d). The record offers little basis for concluding that the information in the AOA screen-prints was materially different from that contained in the files themselves. *See* App. Br. at 51-52 ("Nationwide's screen prints are a detailed and comprehensive compilation of each potential and existing Nationwide policyholder's personal information necessary to write the policy, claims history, premium history, and expiration dates."). [**Red 22-23**, **51-52**] On appeal, Nationwide points to no evidence suggesting otherwise. In fact, it is undisputed that the agents generally entered information into the AOA database directly from the

---

[4] We note that a significant number of courts have rejected the argument that the agents' policyholder files themselves qualify as trade secrets. *See, e.g., Nationwide Mut. Ins. Co. v. Frank*, No. 01-cv-4289,(E.D.N.Y. Sept. 30, 2002); *Nationwide Mut. Ins. Co. v. Fleming*, No. 99-1417 (W.D. Pa. Oct. 2, 2001); *Lipstone v. Nationwide Mut. Ins. Co.*, No. 5:01-cv-307 (E.D.N.C. Sept. 10, 2001); *Nationwide Mut. Ins. Co. v. Fisher*, No. 1:01-cv-63 (N.D.N.Y. Mar. 7, 2001); *Nationwide Mut. Ins. Co. v. Piper*, No. 02-00733 (N.Y. Sup. Ct. Nov. 15, 2001).

physical files maintained at their offices. At most, the AOA database condensed this information into an organized format and permitted an agent to generate Nationwide quotes based on a policyholder's data in real-time. But, at bottom, a screen-print was an electronic compilation of information readily available in the very same office. Simply because the AOA information existed in a different, better-protected format than the physical folders does not elevate it to trade secret status. It is not the medium that matters here, but whether the information itself was adequately protected – and it was not. Because this same information was readily available from another source, it does not qualify as a trade secret as a matter of law. The district court's dismissal is affirmed.

### 2. Duty of loyalty

Nationwide raises a related claim, arguing that the agents' post-termination use of the AOA screen-prints violated a duty of loyalty prohibiting disclosure of confidential information. Although Connecticut common law has not clearly defined the scope of this particular duty, the district court recognized that it might encompass a wider category of information than that considered trade secrets. *See Bland*, 2003 WL 23354137; *Allen Mfg. Co. v. Loika*, 144 A.2d 306, 309 (Conn. 1958) (suggesting a duty of confidentiality without defining its terms); *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1166-67 (N.J. 2001) (holding that confidential information "not technically meeting the strict requirements of trade secrets may be protected").

We need not inquire into the scope of this common law duty here because we find that the AOA screen-prints do not constitute "confidential information." For the very same reasons discussed above, if the details contained in the screen-prints were readily available elsewhere – a fact that Nationwide does not contest – they were not confidential. *Cf. Evans v. Reid & Riege, P.C.*, No. Civ 93-0063465, 1994 WL 710839, at *2 (Conn. Super. Dec. 13, 1994) (holding that information

11

"largely available through public records, is simply not confidential"); *In re Witness Before the Grand Jury*, 791 F.2d 234, 239 (2d Cir. 1986) (communications concerning defendant's bank accounts, real estate transactions, credit cards, car registration, and payment of insurance premiums were not confidential because defendant knew information was or would be disclosed to third parties or public). Having conceded that the agents were entitled to the policyholder information in some form, Nationwide's confidentiality claim, like its trade secrets claim, fails.

3.      Fiduciary duty, breach of contract, and unfair trade practices

Nationwide separately contends that the agents violated their contract and an implied fiduciary duty when they shared company information with competitors prior to leaving Nationwide. We find, however, that Nationwide effectively abandoned this position on appeal because it failed to challenge the district court's determination that it could not prove damages on the breach of fiduciary duty claim. In particular, the district court held that Nationwide's proposed expert could not show any discrete or identifiable loss stemming from the pre-termination disclosure of dummy quotes by defendant Donaldson. Nationwide does not contest the district court's ruling on this point. Nor does it suggest that it could prove damages for those agents who, unlike agent Donaldson, admitted to sharing specific policyholder information before terminating their agency agreement. The briefs do not point to any evidence in the record that would establish either the necessary causal link or ascertainable damages. *See Lux v. Envtl. Warranty, Inc.*, 755 A.2d 936, 945 (Conn. App. 2000) (affirming dismissal of fiduciary duty claim because plaintiff had "failed to prove the damages that it incurred as a result of the plaintiff's alleged breach of his alleged fiduciary duty"); *Leisnre Resort Tech., Inc. v. Trading Cove Assocs.*, 889 A.2d 785, 794-95 (Conn. 2006) (damages must be established with reasonable certainty and not calculated based on a contingency or conjecture).

12

Accordingly, we affirm the district court's dismissal of the fiduciary duty and breach of contract claims as well.

For similar reasons, Nationwide's unfair business practice claim also fails. This claim is premised, again, on the defendants' alleged misuse of policyholder information prior to termination of the Agency Agreement. While Nationwide suggests that nominal damages may be available under CUTPA, the statute also requires proof of an "ascertainable loss" resulting from the allegedly unfair business practice. Conn. Gen. Stat. § 42-110g(a). To be sure, the extent of loss need not always be proven with specificity in CUTPA cases, *see Beverly Hills Concepts, Inc. v. Schatz and Schatz, Ribicoff and Kotkin*, 717 A.2d 724, 740 (Conn. 1998), but a plaintiff must still show causation – i.e., that the allegedly unfair business practice produced a loss of some dimension or magnitude. *See also Service Road Corp. v. Quinn*, 698 A.2d 258, 264-65 (Conn. 1997); *Hinchliffe v. Am. Motors Corp.*, 440 A.2d 810, 814-15 (Conn. 1981). Even assuming that the alleged activities could constitute an unfair business practice, Nationwide points to no evidence that the agents' pre-termination actions caused them to lose customers. Because Nationwide has not satisfied this requirement, we affirm the district court's dismissal of this claim.[5]

B.      The agents' counterclaims

1.      ERISA counterclaims

The agents argue that if the policyholder files constituted trade secrets belonging to Nationwide – an assertion we have rejected above – then they qualified as "employees" under ERISA, 29 U.S.C. § 1002(6), entitling them to the forfeited deferred compensation. In *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992), the Supreme Court addressed a closely related issue,

---

[5] We have considered Nationwide's remaining claims and conclude that they have no merit.

holding that whether a Nationwide insurance agent constitutes an "employee" within the meaning of ERISA is determined by common law agency principles:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323-24 (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751-752 (1989)) (footnotes omitted). On remand, the lower court determined that, under this standard, Darden was not a Nationwide employee entitled to bring claims under ERISA.

In this appeal, the agents argue that the underlying facts have changed since *Darden* and therefore, while the same standard applies, the result is now different. In particular, they claim that, in the years since *Darden*, Nationwide has set out to exercise ever more control over its agents, pushing them into the zone of ERISA employees. One of the primary changes they identify is the shift from paper records to the AOA computer system, whose components agents are required to lease from Nationwide. Likewise, they complain that Nationwide now asserts ownership over the customer information entered into the AOA system – a right it expressly disclaimed in *Darden*. *See* Pet. Reply Br., *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 1992 WL 512047, *4 (No. 90-1802). Finally, the agents state that Nationwide has added a host of new terms to the business relationship, largely involving legal duties owed by agents and their employees to Nationwide.

Based on these changes, the agents argue that, at a minimum, a jury was required to resolve the factual issue of whether they were, in fact, Nationwide employees.

These altered conditions, even if credited, do not create a genuine dispute of material fact about the agents' status as independent contractors. In considering whether an individual is an employee, we have placed particular emphasis on the following factors: (1) the right to control the agents' manner and means of production; (2) the agents' level of skill; (3) whether the hiring party provided employee benefits; (4) the tax treatment of the agents; and (5) the right to assign other projects to the agents. *See Graham v. James*, 144 F.3d 229, 235 (2d Cir. 1998). None of these factors run in the agents' favor. Practically speaking, even if Nationwide today requires its agents to use the AOA system for communicating with the company and generating quotes, this condition hardly constitutes full control over the "manner and means of production." *Id.* Indeed, as the other factors highlight, agents continue to hire their own employees, select their own office-space, bear their own overhead expenses, pay their own taxes, receive no benefits from Nationwide, and control how much they work. On these facts, which are undisputed, the agents do not qualify as employees covered by ERISA as a matter of law. *See Legeno v. Douglas Elliman, LLC*, 311 F. App'x 403, 405 (2d Cir. 2009).

### 2. Breach of contract

When these cases began, the agents asserted a breach of contract counterclaim declaring that Nationwide had violated their contractual right to compete. In particular, they argued that Paragraph 11(f) gave them an affirmative right to the policyholder information so long as they forfeited their deferred compensation – a right that Nationwide allegedly breached when it sought to prevent them from retaining and using these customer details. This argument is unpersuasive. The Agreement

15

does not give the agents a contractual right to use the policyholder information to compete, as they argue on appeal. Rather, the contract is simply silent on this subject, as this Court has observed before. *See Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407-08 (2d Cir. 2006) (applying New York law to the same contract and concluding that "no rational trier of fact could conclude that [by removing policyholder information] Nationwide violated any provisions of the contract").

The agents, however, also raise another species of contract claim on appeal. They point to the Connecticut Supreme Court's intervening decision in *Deming v. Nationwide Mut. Ins. Co.*, 905 A.2d 623 (Conn. 2006), a case involving a former Nationwide agent, which held that Paragraph 11(f)'s forfeiture provision might constitute an unreasonable restraint on trade. *See id.* at 631, 638. *Deming* concluded that the forfeiture clause was simply an indirect method of accomplishing the same objectives as a covenant not to compete, and therefore its restrictions had to be analyzed for "reasonableness" under state law. *Id.* If the agents were to prevail on this theory, Paragraph 11(f)'s forfeiture provisions would be void and the agents would arguably be entitled to their deferred compensation under the surviving contract. *See id.*

But the agents cannot avail themselves of the Connecticut Supreme Court's full holding in *Deming*. Unlike this case, the agents in *Deming* alleged, as one of their central claims, that the contract's forfeiture provision was an unreasonable covenant not to compete and thus altogether unenforceable. *See id*. at 748. By contrast, the agents here repeatedly argued that the forfeiture provision *was* enforceable, so long as they retained the right to the policyholder information. These client details, in short, constituted the benefit of the bargain they struck with Nationwide, and their breach of contract claim sought, in the first instance, nothing more than that benefit. Their reply brief in the present appeal bears out this position: "All along, the agents have asserted that ¶ 11(f)

16

– the forfeiture for compensation clause – permitted the post-termination use of policyholder information if an agent elected to forgo his accrued deferred compensation. If Nationwide had done nothing but keep the deferred compensation, there would have been no dispute between the parties." Mortensen Reply Br. at 9-10. While the agents suggested that an alternative interpretation of Paragraph 11(f) would constitute an unlawful restraint on trade, they always did so as a second-line defense. *See id*. at 10-11. At no point before the district court did they assert a right to *both* the policyholder information and the forfeited compensation.

Because we credit the agents' primary argument, concluding that the policyholder information is neither a trade secret nor protected confidential information, this secondary claim is moot. Having determined that nothing in the contract limited the agents' post-termination use of the policyholder files, this Court need not consider whether Paragraph 11(f) operated as an unlawful restraint on trade. Put simply, this position was never an independent claim raised by the agents below, as it was in *Deming*. Consequently, the district court's dismissal of the breach of contract counterclaim is affirmed.

### 3. Unfair trade practices

Finally, the agents assert their own claim under CUTPA, arguing that Nationwide's efforts to stem the tide of agent defections constituted unfair trade practices. Their principal argument, addressed by the district court, is that Nationwide filed frivolous lawsuits in order to economically cripple the defecting agents. The district court correctly concluded, however, that these lawsuits themselves were not "shams" under the *Noerr-Pennington* doctrine. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *Zeller v. Consolini*, 758 A.2d 376, 381 (Conn. App. Ct. 2000) (applying *Noerr-Pennington* to claims under CUTPA). Although the

suits may have been part of a larger anti-defection strategy, the trade secrets claims they raised were not "objectively baseless." *Id.* at 382.

The agents are on stronger footing, however, where they point to the wider range of actions undertaken by Nationwide to combat defections. The record contains a number of documents suggesting that Nationwide set out to undercut competition in ways quite apart from this litigation. In particular, Nationwide proposed a plan – called its "Defense to Agency Acquisition" – by which it would "slow down payments to the defecting agent[s]" wherever possible, seek to hire away the agents' key personnel, and delay the process of cancelling policies. While these activities may not amount to a breach of the contract per se, they certainly represent actions broadly at odds with the contract's recognition of the departing agents' right to compete and their forfeiture of a substantial sum to do so. Altogether, they suggest an unfair or unscrupulous course of conduct that was not addressed by the district court in its CUTPA analysis. *See Sanghavi v. Paul Revere Life Ins. Co.*, 572 A.2d 307, 311-12 (Conn. 1990) (defining unfair trade practices).

We do not remand this claim for trial, however, because – as with Nationwide's CUTPA claim – the agents point to no evidence showing that these practices resulted in an "ascertainable loss." Conn. Gen. Stat. § 42-110g(a). Indeed, the agents do not detail any specific efforts to implement the proposals outlined in the strategy documents, nor do they tie these anti-defection practices to any identifiable loss or injury they suffered. Accordingly, the district court's dismissal of these claims is affirmed.

III.    CONCLUSION

For the reasons stated above, the judgment of the district court is affirmed.