NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2549
_____

NATIONWIDE INSURANCE INDEPENDENT
CONTRACTORS ASSOCIATION, INC, on
behalf of its Pennsylvania members who have
contracts with Nationwide Mutual Insurance
Company; DAVID A. GARDNER,
                                                          Appellants

v.

NATIONWIDE MUTUAL INSURANCE COMPANY

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 2-11-cv-03085)
District Judge: Honorable Mary A. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
(Submitted: March 22, 2013)
_____

Before: McKEE, *Chief Judge*, SMITH, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: May 3, 2013)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Appellants David Gardner ("Gardner") and Nationwide Independent Insurance Agents, Inc. ("NIICA") (collectively "Appellants") brought a complaint against Appellee Nationwide Mutual Insurance Company ("Nationwide") seeking declaratory relief.[1] The District Court granted Appellee's motion to dismiss the complaint. This appeal followed. For the reasons below, we will affirm.

## I. BACKGROUND

NIICA is a voluntary-membership association of insurance agents. Nationwide has no contractual relationship with NIICA and has never acknowledged NIICA as a representative of its insurance agents.

Gardner is an insurance agent in Pennsylvania and has operated under an agent agreement with Nationwide since 1991 ("agent agreement"). Under the agent agreement, agents have the option of accumulating deferred compensation incentive credits ("DCIC") or enrolling in an alternative compensation program with higher levels of compensation and benefits. Additionally, the agent agreement contains an exclusive representation provision which permits Gardner to place policies of insurance with companies other than Nationwide with Nationwide's consent. Historically, Nationwide has allowed agents to place policies with a network of other insurance carriers that are Nationwide subsidiaries ("Network") in situations where Nationwide does not offer the

---

[1] NIICA brought the original complaint on its own. The District Court dismissed that complaint upon Appellee's motion. The complaint under consideration here is the amended complaint.

2

insurance product the client requires.

Beginning in 2004, Nationwide implemented several changes to its arrangement with agents. These changes are the subject of this litigation. In 2006, Nationwide introduced the "On Your Side Promise" program, which was designed to increase Nationwide's supervisory controls over its agents' activities. Gardner declined to sign this agreement and now claims he was denied a $10,000 bonus for refusing to enter into the agreement. Later, in 2010, Nationwide implemented the 2010 Agent Choice Addendum ("2010 Addendum"). At the time, agents who signed this addendum waived their right to accrue additional DCIC, although they would retain the DCIC they had already accrued. Gardner did not sign the 2010 Addendum either. Appellants allege that, in order to penalize Gardner for his refusal to give up his DCIC by signing the 2010 Addendum, Nationwide has denied Gardner access to the Network, thus undermining his ability to place policies that he had previously been able to place.

Appellants also allege that Nationwide has asserted exclusive ownership over policyholder information, thus "depriving Mr. Gardner of the financial value of his business." (Appellant's Br. 7.) Specifically, Appellants take issue with three Nationwide policies: (1) a provision in the 2010 Addendum that gives Nationwide exclusive and permanent ownership and control over policyholder information; (2) a statement in Nationwide's 2009 Agency Administration Handbook that an agent's failure to turn over policyholder information, upon termination of a contract with Nationwide, constitutes grounds for forfeiture of agent's post-termination benefits; and (3) Nationwide's assertion

3

that its policyholder information is a trade secret.[2]  Appellants claim that these assertions harm Gardner because his ownership stake in policyholder information is vital to his book of business and his ability to obtain independent financing in the future.

In their complaint, Appellants seek declaratory relief as to five claims. Specifically, Appellants request orders that: (1) Nationwide's discrimination against agents who refuse to relinquish their DCIC, by signing the 2010 Addendum, is a breach of the agent agreement; (2) Nationwide's practice of denying Gardner and other agents who declined to sign the "On Your Side Promise" agreement access to the Network is a breach of the agent agreement; (3) Nationwide's assertion of exclusive ownership over policyholder information is a breach of the agent agreement;[3] (4) Nationwide's assertion that policyholder information is Nationwide's trade secret is not supportable under trade secret law; and (5) Nationwide's Agency Administrative Handbook, which contains statements that the agents are bound by Nationwide's assertion of exclusive ownership of policyholder information, is not part of the agent agreements.

Appellee sought to dismiss all of the claims, arguing that Gardner lacked standing and had failed to state a claim.  The District Court granted the motion.  The District Court also held that NIICA lacked associational standing as to all claims because, since Gardner lacked standing and failed to state a claim, NIICA had failed to identify at least one

---

[2] Appellants do not specify the origin of the trade secret assertion except to allege that Nationwide is making such assertions "in litigations and elsewhere."  (Compl. ¶ 73.)

[3] Appellants seem to allege that these first three practices are a breach of the agent agreement under the implied covenant of good faith and fair dealing.

4

NIICA member that had a viable claim. Appellants filed a timely appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

We exercise plenary review over the District Court's grant of a motion to dismiss. *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). "[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the [Appellant], and all inferences must be drawn in [his favor]." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## III. ANALYSIS

A. Standing

    1.    *Challenges to the On Your Side Promise and 2010 Addendum*

We agree with the District Court that Gardner lacks standing to challenge either the On Your Side Promise program or the 2010 Addendum. In order to have standing, a complaining plaintiff must be able to show that he has suffered an "injury in fact" which is "concrete and particularized . . . actual and imminent, [and] not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). We have further specified that an injury is only "concrete" if it is "distinct and palpable, as opposed to

5

merely abstract." *N.J. Physicians, Inc. v. President of the United States*, 653 F.3d 234, 238 (3d Cir. 2011).

As an initial matter, because Gardner has refused to sign the two agreements, he is not a party to either of these contracts; nor has he cited any authority which would permit a non-party or non-beneficiary to challenge the existence or implementation of a contract. *See Culhane v. Aurora Loan Serv.*, 708 F.3d 282 (1st Cir. 2013) (noting that generally a "nonparty who does not benefit from a contract generally lacks standing to assert rights under that contract").

Appellants have also presented no facts demonstrating that Gardner has suffered an injury in fact resulting from the existence or implementation of these contracts or from denial of access to the Network. As the District Court properly observed, "[a]t most, [Gardner] seem[s] to object to those agents who participate in the agreements receiving benefits which are not available to those who do not participate." *Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co.*, No. 11-cv-3085, 2012 WL 1524381, *3 (E.D. Pa. May 1, 2012).

Moreover, regarding access to the Network, Gardner has not shown that he has been injured in the slightest. "Gardner does not allege that he has sought to use the network, or that he has been denied the ability to do so. He likewise does not allege any facts to support his claim that network access is tied to relinquishment of retirement benefits." *Id.*

Given these deficiencies, we cannot find that Gardner has stated an injury in fact,

and therefore, he lacks standing to challenge these agreements per se.[4]

2. *Nationwide's Claim of Exclusive Ownership and Control over Policyholder Information*

Appellants' last three claims, relating to Nationwide's claim of exclusive ownership and control over policyholder information, must also fail because Gardner has failed to specify an injury in fact and therefore lacks standing to bring these claims. Appellants allege that Nationwide's practice of asserting exclusive ownership over policyholder information has damaged Gardner because "if [he] need[s] to secure financing or show credit worthiness, [policyholder information] is the asset that [he] ha[s] to rely on." (Compl. ¶ 71.) Gardner has made no allegations that he has immediate plans to terminate his agreement with Nationwide and use the policyholder information at his subsequent place of business. Nor does Gardner allege that Nationwide has taken affirmative steps to deny him access to the policyholder information. Gardner does not allege that he has sought and been denied financing. Rather, Gardner's claim is premised on mere speculation that he *may* wish to obtain financing and *believes* he will be unable to do so at *some* undetermined point in the future. We simply cannot say that an injury premised on such multiple contingencies is sufficiently concrete. "[S]ome day intentions — without any description of concrete plans, or indeed even any specification of when the some day will be — do not support a finding of the actual or imminent injury" that is

---

[4] Appellants also argue that their claims should be adjudicated because the claims are ripe under the three-pronged standard established in *Traveler Inc. Co. v. Obusek*, 72 F.3d 1148 (3d Cir. 1995). Ripeness is not a substitute for injury in fact. No adjudication is required here.

required to establish standing. *Summers*, 555 U.S. at 496 (internal quotation marks omitted).[5]

Therefore, we hold that Gardner lacks standing as to the last three claims as well.

B. Failure to State a Claim

We also consider Appellants' challenge to the 2010 Addendum and the On Your Side Promise to the extent that it alleges a breach of contract.[6] Specifically, Gardner alleges that the 2010 Addendum and On Your Side Promise are breaches of the implied covenant of good faith and fair dealing of his agent agreement because they "frustrate the primary objectives of the Agent's Agreement, which include the best possible service to the customer and maintaining a growing agency," prevent him from receiving a bonus to which he is entitled, and interfere with his "right to exercise independent judgment as to . . . [the] manner of soliciting insurance, service policyholders and otherwise carrying out provisions of the Agreement." (Appellant's Br. 18, 23 (citing App. 90).) Appellants'

---

[5] Gardner brings to our attention several decisions from other federal courts, which all held that Nationwide did not have a property or other interest in the policyholder information. *See Nationwide Mut. Ins. Co. v. Mortensen*, 606 F.3d 22 (2d Cir. 2010) (collecting cases from a number of courts that have rejected the argument that the agent's policyholder files themselves qualify as trade secrets); *Nationwide Mut. Ins. Co. v. Fleming*, No. 99-1417 (W.D. Pa. Oct. 2, 2001) (finding that language in the agent agreement did not bestow on Nationwide an ownership right in the policyholder information). Both *Mortensen* and *Fleming* suits are distinguishable because each arose following an injury in fact. *See Mortensen*, 606 F.3d at 26-27 (former Nationwide agents allegedly shared policyholder information with Nationwide's competitors); *Fleming*, No. 99-1417, slip op. at 1-3 (same).

[6] As Gardner is a party to the agent agreement, he has standing to challenge an alleged breach of it.

8

arguments fail because they do not account for the requirement under Pennsylvania law that a duty of good faith and fair dealing in a breach of contract claim must always be grounded in a specific provision of a contract. *See Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000) (noting that a claim for breach of the duty of good faith and fair dealing must not be "divorced from the specific clauses of the contract"); *see also Burton v. Teleflex, Inc.*, 707 F.3d 417, 433 (3d Cir. 2013) (holding that under Pennsylvania law, a claim for breach of the implied covenant of good faith and fair dealing is subsumed in a breach of contract claim).

Appellants have presented no facts demonstrating a breach of Gardner's agent agreement. Appellants cannot point to any provision in the agent agreement which entitles Gardner to a bonus payment; nor can they point to any provision which is violated by Nationwide's mere declaration of policyholder information ownership.[7] Moreover, Gardner's agent agreement specifically requires Gardner to obtain "the written consent" of Nationwide before placing policies with carriers within the Network. As such, Appellants appear to complain merely that Nationwide is acting in accordance with the contract by denying Gardner access to the Network, and as we have previously held, "the good faith duty . . . cannot be used to override an express contractual term." *Northview Motors*, 227 F.3d at 91.

---

[7] We note that Appellants have presented no facts demonstrating that Nationwide has acted upon this declaration of ownership. Appellants do not allege that Nationwide has prevented Gardner from accessing the policyholder information, nor do they allege that Nationwide has sought damages for Gardner's use of the policyholder information.

As Appellants are unable to specify a contract provision being violated, we have no authority to review Nationwide's perceived lack of generosity outside of a contractual obligation. We therefore agree with the District Court that, to the extent Appellants challenge the denial of bonuses, access to the Network, and Nationwide's claim of ownership over policyholder information as violations of Gardner's agent agreement, they have failed to state a claim.

C. Associational Standing

Lastly, we agree with the District Court's finding that NIICA lacks associational standing to bring this suit. An association is permitted to bring a suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977). In order to satisfy the first *Hunt* prong, associations must present "at least one identified member" who has suffered a specified harm. *Summers*, 555 U.S. at 498. Gardner was the only NIICA member identified, and because we hold that Gardner has failed to allege any facts which give rise to standing or which allow him to state a viable claim, NIICA's claim to associational standing fails.[8]

---

[8] The District Court also held that NIICA had failed to satisfy the second *Hunt* prong by addressing "the potential conflict of interest among its members based on this claim of discrimination." *Nationwide*, 2012 WL 1524381, at *3. In response, NIICA claims that "none of its members would be harmed by the declarations sought . . . . Other Nationwide agents do not benefit in any way from the practices which are damaging [Gardner and

10

## IV.    CONCLUSION

For the foregoing reasons, we affirm the District Court's grant of Appellee's

motion to dismiss.

---

similarly-situated agents] because Nationwide agents do not compete among themselves." (Appellant's Br. 9-10.)  Because we find that NIICA has failed to meet the first *Hunt* prong, we need not resolve this issue.